FILED

2013 MAY 16  PM 3: 50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

ANDRÉ BIROTTE JR.
United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
    300 North Los Angeles Street
    Los Angeles, California  90012
    Telephone: (213) 894-5810
    Facsimile: (213) 894-0115
    E-mail: Sandra.Brown@usdoj.gov
CHRISTOPHER S. STRAUSS
Trial Attorney (LA Bar No. 28770)
ELLEN M. QUATTRUCCI
Trial Attorney (DC Bar No. 462103)
Tax Division, Western Criminal Enforcement Section
United States Department of Justice
    601 D. St. NW, Room 7022
    Washington, D.C. 20004
    Telephone: (202) 514-5762
    Facsimile: (202) 514-9623
    E-mail: Christopher.S.Strauss@usdoj.gov
          Ellen.M.Quattrucci@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR **13- 0344** |
| | ) | |
| Plaintiff, | ) | PLEA AGREEMENT FOR DEFENDANT |
| | ) | ALEXEI IAZLOVSKY |
| v. | ) | |
| | ) | |
| ALEXEI IAZLOVSKY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    1.   This constitutes the plea agreement between ALEXEI

IAZLOVSKY ("defendant") and the United States Attorney's Office

for the Central District of California and the U.S. Department of

Def. Initials _____

Justice, Tax Division (collectively the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities and is subject to the approval of the Department of Justice, Tax Division.

<u>DEFENDANT'S OBLIGATIONS</u>

2.  Defendant agrees to:

a) Give up the right to indictment by a grand jury, waive venue, and at the earliest opportunity requested by the USAO and provided by the Court, to appear and plead guilty to a one count Information charging a violation of 26 U.S.C. Section 7206(1) for tax year 2008 in the form attached to this agreement or a substantially similar form.

b) Not to contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing factors contained in this agreement.

d) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

f) Be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

2        Def. Initials _A̲t̲_

g) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-5000) to the USAO prior to sentencing.

3. Defendant further agrees to cooperate fully with the USAO, the Internal Revenue Service, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a) Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b) Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c) Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement; and (2) "Plea Information" shall mean any statements

3    Def. Initials

made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

## DEFENDANT'S OTHER OBLIGATIONS

5.  Defendant also agrees:

a) To cooperate with the IRS in the civil examination, determination, assessment and collection of income taxes related to defendant's 2004 through 2010 income tax returns and any related corporate/entity tax returns, and further agrees not to conceal, transfer, or dissipate funds or property that could be used to satisfy such taxes, penalties and interest.

b) To repatriate any funds or assets held in any foreign country or outside the United States.

c) To sign Closing Agreements with the IRS prior to the time of sentencing for the years 2004 through 2010, correctly reporting income and deductions for these years.  Further, if requested to do so by the IRS, provide the IRS with information regarding the years covered by the Closing Agreements, and will make his best efforts to promptly pay all additional taxes, penalties and interest assessed by the IRS as well as any additional amounts determined by the IRS to be owing.

d) To give up any and all objections that could be asserted to the Examination Division of the IRS receiving materials or information obtained during the criminal

4        Def. Initials

investigation of this matter, including materials and information obtained through grand jury subpoenas.

e) That nothing in this agreement shall preclude or bar the IRS from the assessment and/or collection of any additional tax liability, including interest and penalties, determined to be due and owing from defendant by the IRS for 2004, 2005, 2006, 2007, 2008, 2009, and 2010.

f) That, in order to resolve defendant's civil liability for failing to file Reports of Foreign Bank and Financial Accounts, Forms TD F 90-22.1, and other foreign information reporting obligations under the United States law, for tax years 2004 through 2010, defendant will pay a fifty percent penalty with respect to the funds held in an undeclared offshore account for the one year with the highest balance in the account for calendar years 2004 through 2010, and agrees to pay this sum of money prior to sentencing to the United States Treasury, through the U.S. Department of Justice, Tax Division.

THE USAO'S OBLIGATIONS

6.   If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing factors contained in this agreement.

5          Def. Initials

        c) At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offense up
to and including the time of sentencing, to recommend a two-level
reduction in the applicable sentencing guideline offense level,
pursuant to U.S.S.G. § 3E1.1, and an additional one-level
reduction if available under that section.

        d) Not to further criminally prosecute defendant for
any additional violations known to the USAO at the time of the
plea, arising out of the information provided by the defendant,
and defendant's conduct (i) described in the Information or (ii)
described in the statement of facts provided in Attachment A.
The USAO further agrees not to prosecute defendant's wife for any
violations known to the USAO at the time of the plea arising out
of the information provided by the defendant, and for any conduct
described in the information or the statement of facts provided
in Attachment A.  Defendant understands that the USAO is free to
prosecute defendant or his wife for any other unlawful past
conduct or any unlawful conduct that occurs after the date of
this agreement.  Defendant understands that at the time of
sentencing the Court, may consider any relevant conduct related
to the crime(s) set forth herein in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed after

                                6      Def. Initials *AI*

consideration of the Sentencing Guidelines and all other relevant

factors under 18 U.S.C. § 3553(a).

7.    The USAO further agrees:

a) Not to offer as evidence in its case-in-chief in the above-captioned case or any other prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any case that may be brought against defendant by the USAO, any Cooperation Information.   Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any prosecution of defendant, (2) to cross-examine defendant should defendant testify, or to rebut any evidence, argument or representations made by defendant or a witness called by defendant in any trial, sentencing hearing, or other court proceeding, and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b) Notwithstanding Paragraph 7(a), the USAO agrees not to use the information disclosed in Paragraphs 19-23 of the Statement of Facts against defendant at sentencing for the purpose of determining the applicable guideline range including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that the information disclosed in Paragraphs 19-23 not be used in determining the

7        Def. Initials

applicable guideline range or the sentence to be imposed.  The

parties agree that the information contained in Paragraphs 19-23

constitutes information subject to U.S.S.G. § 1B1.8(a).

Defendant understands, however, that Paragraphs 19-23 will be

disclosed to the probation office and the Court, and that the

Court may use this information for the purposes set forth in

U.S.S.G. § 1B1.8(b).

c) In connection with defendant's sentencing, to bring

to the Court's attention the nature and extent of defendant's

cooperation.

d) If the USAO determines, in its exclusive judgment,

that defendant has both complied with defendant's obligations

under this agreement and provided substantial assistance to law

enforcement in the prosecution or investigation of another

("substantial assistance"), to move the Court pursuant to

U.S.S.G. § 5K1.1 to fix an offense level and corresponding

guideline range below that otherwise dictated by the sentencing

guidelines, and to recommend a sentence within this reduced

range.  Defendant understands that he cannot withdraw his plea of

guilty if the USAO does not file a motion for a downward

departure.  Defendant further understands that the USAO has not

made a determination as of this date whether the facts of this

case presents circumstances deserving of a downward departure.

8.        Def. Initials

<u>DEFENDANT'S UNDERSTANDINGS REGARDING SUBSTANTIAL ASSISTANCE</u>

8.   Defendant understands the following:

a) Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b) Nothing in this agreement requires the USAO or any other prosecuting or law enforcement agency to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c) Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d) At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e) The USAO's determination of whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in

9      Def. Initials

which defendant testifies or in which the government otherwise

presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

9. Defendant understands that for defendant to be guilty

of the crime charged in Count One, (a violation of Title 26,

United States Code, Section 7206 (1)) the following must be true:

a.   The defendant made and signed a U.S. Individual Income

     Tax Return for the year 2008 that he knew contained

     false information as to a material matter;

b.   The return contained a written declaration that it was

     made under the penalties of perjury; and

c.   The defendant acted willfully in filing the false

     return.

     Defendant admits that defendant is, in fact, guilty of

this offense as described in Count One of the Information.

<u>PENALTIES</u>

10.   Defendant understands that the statutory maximum

sentence that the Court can impose for a violation of Title 26,

United States Code, Section 7206(1)is: three years imprisonment;

a one year period of supervised release; a fine of $250,000 or

twice the amount of gross gain or gross loss resulting from the

offense, whichever is greater; and a mandatory special assessment

of $100.   Defendant agrees to pay the special assessment at or

before the time of sentencing.

10      Def. Initials _____

11.    Defendant understands and agrees that the Court: (a) may order defendant to pay any additional fines that defendant owes to the United States; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

12.    The parties further agree that the tax loss determined for criminal purposes is not binding for civil purposes and is exclusive of civil penalties and interest.

13.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.    Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised

11    Def. Initials

1  release in another case, and suspension or revocation of a

2  professional license.  Defendant understands that unanticipated

3  collateral consequences will not serve as grounds to withdraw

4  defendant's guilty plea.

5      15.  Defendant understands that, if defendant is not a

6

7  United States citizen, the felony conviction in this case may

8  subject defendant to removal, also known as deportation, which

9  may, under some circumstances, be mandatory.  The Court cannot

10  and defendant's attorney also may not be able to, advise

11  defendant fully regarding the immigration consequences of the

12  felony conviction in this case.  Defendant understands that by

13  entering a guilty plea defendant waives any claim that unexpected

14

15  immigration consequences may render defendant's guilty plea

16  invalid.

17                    FACTUAL BASIS

18      16.  Defendant and the USAO agree and stipulate to the

19  statement of facts provided in Attachment A which is attached

20  hereto and incorporated by reference herein.  The statement of

21  facts includes facts sufficient to support a plea of guilty to

22

23  the charge described in this plea agreement.  It is not meant to

24  be a complete recitation of all facts relevant to the underlying

25  criminal conduct or all facts known to defendant that relate to

26  that conduct.  The parties stipulate that the conduct of

27  defendant referred to in Attachment A hereto violated 26 U.S.C.

28

                        12      Def. Initials

§ 7206(1) as charged in Count One of the Information.

<u>SENTENCING FACTORS</u>

17.   Defendant understands in determining defendant's sentence the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence and sentencing range established under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"). Defendant understands that the Sentencing Guidelines are only advisory, that defendant cannot have any expectation of receiving a sentence within the Sentencing Guideline range, and that after considering the Sentencing Guidelines and the other Section 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

18.   Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors under the November 2011 Guideline Sentencing Manual and the Supreme Court holding in <u>United States v. Booker</u>:

        a)   Tax Loss: The relevant actual, probable, or intended tax loss under Section 2T1.1 of the Sentencing Guidelines resulting from the offense committed in this case and all relevant conduct is the tax loss associated with defendant's false tax returns and his undeclared account at Bank A.   The

13      Def. Initials

parties agree that the tax loss is more than $400,000, but less than $1,000,000 (exclusive of interest and penalties) for an Offense Level of 20.  See U.S.S.G. §§ 2T1.1 and 2T4.1(H).

      b)    Sophisticated Means: The offense involved sophisticated means, which results in a two-level offense increase.  See U.S.S.G. § 2T1.1(b)(2).

Subject to the provisions of paragraph 7, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the applicable Offense Level be imposed.  The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under 3E1.1(b)) only if the conditions set forth in this agreement are met.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice withing the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.  Additionally, each party reserves the right to argue, and to dispute the arguments of the

14     Def. Initials

other, regarding the applicability of 18 U.S.C. Section 3553(a) and other departure factors.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. The stipulations in this agreement do not bind either the United States Probation Office or the Court. The Court will determine the facts and calculations relevant to sentencing. Both defendant and the USAO are free to: (a) supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.

21. Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, defendant cannot, for that reason alone, withdraw defendant's guilty plea.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

22. By pleading guilty, defendant gives up the following rights:

    a)   The right to persist in a plea of not guilty.

    b)   The right to a speedy and public trial by jury.

15    Def. Initials 

c)  The right to the assistance of counsel at trial, including, if defendant could not afford an attorney, the right to have the Court appoint one for defendant.  In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel at every other stage of the proceedings.

d)  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e)  The right to confront and cross-examine witnesses against defendant.

f)  The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g)  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h) Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

16      Def. Initials

## WAIVER OF APPEAL OF CONVICTION

23.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

24.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to a total offense level of 22 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the standard conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above,

17      Def. Initials 

(b) the Court calculates the offense level to be used for selecting a sentencing range under the Sentencing Guidelines to be 22 or above prior to any departure under U.S.S.G. § 5K1.1, and (c) the Court imposes a term of imprisonment within or above the range corresponding to the offense level calculated after any downward departure under U.S.S.G. § 5K1.1 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

26.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except

18      Def. Initials

to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

27.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

28.  This agreement is effective upon signature and execution by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

29.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach

19      Def. Initials

without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

(a) If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

(b) The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c) The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

20        Def. Initials

d) In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

30.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

21   Def. Initials

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

31. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

32. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not in error, although each party agrees to maintain its views that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the

22      Def. Initials

1  USAO's obligations not to contest the facts agreed to in this

2  agreement.

3       33.  Defendant understands that even if the Court ignores

4  any sentencing recommendation, finds facts or reaches conclusions

5  different from those agreed to, and/or imposes any sentence up to

6

7  the maximum established by statute, defendant cannot, for that

8  reason, withdraw defendant's guilty plea, and defendant will

9  remain bound to fulfill all defendant's obligations under this

10 agreement.  Defendant understands that no one – not the

11 prosecutor, defendant's attorney, or the Court – can make a

12 binding prediction or promise regarding the sentence defendant

13 will receive, except that it will be within the statutory

14

15 maximum.

16                    <u>NO ADDITIONAL AGREEMENTS</u>

17      34.  Defendant understands that, except as set forth herein,

18 there are no promises, understandings, or agreements between the

19 USAO and defendant or defendant's attorney, and that no

20 additional promise, understanding, or agreement may be entered

21 into unless in a writing signed by all parties or on the record

22

23 in court.

24

25      <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

26      35.  The parties agree that this agreement will be

27 considered part of the record of defendant's guilty plea hearing

28

Def. Initials

1   as if the entire agreement had been read into the record of the

2   proceeding.

3   AGREED AND ACCEPTED

4   UNITED STATES ATTORNEY'S OFFICE
5   FOR THE CENTRAL DISTRICT OF CALIFORNIA

6

7   ANDRÉ BIROTTE, JR.
    United States Attorney

8

9   _____          _____
10  SANDRA R. BROWN                             Date
    Assistant United States Attorney

11
    Chief, Tax Division
12

13

14  UNITED STATES DEPARTMENT OF JUSTICE
    TAX DIVISION

15
    KATHRYN KENEALLY
16  Assistant Attorney General

17

18  CHRISTOPHER S. STRAUSS              Date  1/3/12
    Trial Attorney
19  ELLEN M. QUATTRUCCI
20  Trial Attorney

21

22

23

24

25

26

27

28

                        24        Def. Initials

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had
enough time to review and consider this agreement, and I have
carefully and thoroughly discussed every part of it with my
attorney.  I understand the terms of this agreement, and I
voluntarily agree to those terms.  I have discussed the evidence
with my attorney, and my attorney has advised me of my rights, of
possible pretrial motions that might be filed, of possible
defenses that might be asserted either prior to or at trial, of
the sentencing factors set forth in 18 U.S.C. § 3553(a), of
relevant Sentencing Guidelines provisions, and of the
consequences of entering into this agreement.  No promises,
inducements, or representations of any kind have been made to me
other than those contained in this agreement.  No one has
threatened or forced me in any way to enter into this agreement.
I am satisfied with the representation of my attorney in this
matter, and I am pleading guilty because I am guilty of the
charges and wish to take advantage of the promises set forth in
this agreement, and not for any other reason.

_____                    12/14/2012
ALEXEI IAZLOVSKY                          _____
Defendant                                 Date

                         25          Def. Initials  _____

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Alexei Iazlovsky's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          ___12/19/12_____
ROBERT KATZBERG                    Date
Counsel for Defendant
Alexei Iazlovsky

                              26        Def. Initials

ATTACHMENT A

<u>STATEMENT OF FACTS</u>

1.   ALEXEI IAZLQVKSY ("IAZLOVSKY") was born in Russia and was a Russian citizen.  IAZLOVSKY married his wife in 1997 and became a United States citizen in 2002. IAZLOVSKY owned a domestic corporation, A&Y Associates, Inc. ("A&Y Associates") that produced and sold documentaries, and other television programs, pursuant to contracts with Russian television stations.

2.   IAZLOVSKY also owned and controlled two domestic entities:  RTTV America, Inc. ("RTTV America") and RTTV Studios, LLC ("RTTV Studios").

3.   IAZLOVSKY began using tax return preparer David Kalai in 1997 because he was the tax return preparer his wife had engaged to prepare her tax returns prior to their marriage. David Kalai's son, Nadav Kalai, began assisting in the preparation of IAZLOVSKY's tax returns and signed as the return preparer of IAZLOVKKY's 2001 tax return.  David Kalai and Nadav Kalai owned and operated United Revenue Service, Inc.("URS").

4.   The first time Nadav Kalai mentioned an offshore account was in either 2000 or 2001 when IAZLOVSKY and Nadav Kalai were meeting to discuss the preparation of his tax return.  Nadav Kalai advised IAZLOVSKY that if he didn't need money in the United States he should not bring the money to the United States.

5.   Nadav Kalai told IAZLOVSKY that N.K., another URS employee, would set up an offshore company and the company would

1  open a bank account offshore.  Nadav Kalai advised IAZLOVSKY that

2  the money he did not need to live on in the United States should

3  be sent to the offshore bank account.  Nadav Kalai suggested that

4  the foreign corporation be named ITV Holdings.

5      6.    ITV Holdings, Ltd. was incorporated in Belize.  While

6  at the Bethesda, Maryland office of URS, IAZLOVSKY heard Nadav

7  Kalai instruct N.K. that N.K. needed to set up the foreign

8  corporation. IAZLOVSKY and his wife signed a Power of Attorney

9  that was provided by URS. IAZLOVSKY was to pay a fee of $4,000 to

10 United Revenue Service for the incorporation services.  IAZLOVSKY

11 had signatory authority over the foreign bank account.

12     7.    Nadav Kalai further advised IAZLOVSKY that he did not

13 have to report this account to the Internal Revenue Service

14 ("IRS") because it was "off the books" and no one would know

15 about it.  Nadav Kalai told IAZLOVSKY that his father, David

16 Kalai, had a good relationship with Bank A in Israel and that

17 they provided this service to other clients. IAZLOVSKY understood

18 that he was violating the tax laws by diverting funds earned by

19 A&Y Associates to Bank A in order to reduce his tax liability.

20     8.    The foreign account was opened at the Luxembourg branch

21 of Bank A.  Nadav Kalai told IAZLOVSKY that the bank account was

22 going to be opened in Luxembourg because the tax law was more

23 favorable and IAZLOVSKY could keep his account undeclared.  Nadav

24 Kalai told IAZLOVSKY that as long as he kept his money in

25 Luxembourg, there was no tax to be paid.

9.    IAZLOVSKY and his wife met with H.M. from Bank A at the Hilton Hotel in New York City to open the account.  H.M. told IAZLOVSKY that he had a lot of clients to meet so the meeting would be short.  Nadav Kalai had previously instructed IAZLOVSKY that he and his wife would need to bring their passports to the meeting.  Nadav Kalai had either provided IAZLOVSKY with H.M.'s phone number to set up the meeting or had told IAZLOVSKY to meet H.M. at the Hilton Hotel.  IAZLOVSKY brought his Russian passport and his wife brought her U.S. passport.  IAZLOVSKY and his wife signed the necessary paperwork to open the account at the hotel. The paperwork had already been prepared prior to IAZLOVSKY's arrival.

10.    Nadav Kalai told IAZLOVSKY that he could wire payments from his Russian clients to the new account at Bank A.  Nadav Kalai provided IAZLOVSKY with the name of a contact at Bank A to arrange the wire transfers.  IAZLOVSKY and Nadav Kalai would meet each year regarding what IAZLOVSKY needed to live on in the United States.  Nadav Kalai would always instruct IAZLOVSKY to leave money he did not need offshore.  From the inception of the account until it was closed by IAZLOVSKY in 2009, IAZLOVSKY diverted a total of $2.6 million in payments from his Russian clients to his undeclared foreign bank account at Bank A in Luxembourg.  No income tax was paid on these diverted funds.

11.    In late 2008 or early 2009, IAZLOVSKY had a conversation with Nadav Kalai regarding UBS and the U.S.

-3-

1  government.   Nadav Kalai told IAZLOVSKY that his account would

2  never be found out and there was nothing to worry about.

3  IAZLOVSKY told Nadav Kalai that he wanted to close the account

4  anyway.   Nadav Kalai further advised IAZLOVSKY that closing the

5  account was not necessary because it was not a UBS account, but

6  he could close it if he wanted to.

7       12.   In and around the time IAZLOVSKY closed the account at

8  Bank A, Nadav Kalai suggested a way to repatriate the money so

9  that "red flags" would not be raised with the IRS.   Specifically,

10  Nadav Kalai suggested that IAZLOVSKY funnel the money in the

11  offshore account through a Russian client that paid for the

12  documentaries produced by A&Y Associates.   In order to conceal

13  where the funds were coming from, IAZLOVSKY sent the money in the

14  Bank A account, through the Russian client's account, to RTTV

15  Studios.   RTTV Studios had recently been formed with the

16  assistance of Nadav Kalai.   Nadav Kalai suggested the money be

17  wired to this new corporation because it had no previous history

18  with the IRS, and therefore, the large wire of funds wouldn't

19  raise any red flags with the IRS.

20       13.   In April 2009, IAZLOVSKY transferred $2,230,060 from

21  his Bank A account to the Russian client that paid for

22  documentary services.   At IAZLOVSKY's request, the Russian client

23  then wired the money from its own account to the RTTV Studios

24  account in the United States on May 5, 2009.   The Russian client

25  included the $2,230,060 in a $2,830,000 wire transfer to RTTV

-4-

1    Studios account in the United States.  The additional wired funds

2    consisted of payments for services by A&Y Associates.  IAZLOVSKY

3    used $1,873,000 of the money previously on deposit at Bank A to

4    purchase a house in the United States.  No tax was paid on the

5    monies while they remained in the Bank A account.  Bank A

6    informed IAZLOVSKY that it would retain approximately $300,000 of

7    the funds IAZLOVSKY had on deposit as a reserve against losses.

8         14.  During 2002 through 2009, IAZLOVSKY maintained a

9    balance of more than $10,000 in his account at Bank A.

10        15.  During 2002 through 2009, IAZLOVSKY had an ownership

11   interest in and signatory authority over the ITV Holdings, Ltd.

12   bank account at Bank A.

13        16.  From 2002 through 2009, IAZLOVSKY filed false

14   individual and corporate tax returns that omitted the taxable

15   income diverted to and generated by his offshore bank account at

16   Bank A.  Nadav Kalai prepared the false returns and knew the

17   returns were false.  IAZLOVSKY knew it was illegal to file false

18   tax returns with the IRS.  IAZLOVSKY acted willfully in filing

19   the false individual and corporate tax returns.

20        17.  Specifically, with respect to IAZLOVSKY'S 2008

21   individual federal income tax return Form 1040, Line 17 of this

22   tax return is false because it omitted income from A&Y

23   Associates, an S Corporation for tax purposes, that was diverted

24   to IAZLOVSKY's foreign bank account.  The tax return is also

25   false because (i) IAZLOVSKY failed to check the box "yes" in

1  response to Question 7a and disclose that he had signature

2  authority and an ownership interest in a foreign bank account;

3  and (ii) IAZLOVSKY failed to list Luxembourg as the country where

4  the foreign account was located in response to Question 7b.

5       18.  IAZLOVSKY knew his 2008 individual tax return contained

6  the false information specified in Paragraph 17, but

7  electronically signed, under the penalties of perjury, and

8  authorized Nadav Kalai to electronically file the tax return.

9  IAZLOVSKY acted willfully in filing his false 2008 individual

10  federal income tax return.

11      19.  In addition to the offshore scheme, Nadav Kalai

12  assisted IAZLOVSKY with creating at least two false deductions on

13  the RTTV America tax return.

14      20.  On December 29, 2008, RTTV, America transferred

15  $245,000 to Sedy Systems, LLC.  On February 18, 2009, RTTV

16  America transferred another $97,000 to Sedy Systems, LLC.  Sedy

17  Systems, LLC is a company owned and/or controlled by Nadav Kalai.

18  These two payments were made to create false booking entries that

19  would support false deductions on RTTV, America's tax return.

20  Sedy Systems provided no services or goods to RTTV America.

21  Nadav Kalai was supposed to then forward the $342,000 to a

22  Russian client for the client to wire the money to RTTV Studios.

23  Nadav Kalai only wired $200,000 (in two separate wires) to the

24  Russian client and kept the remaining $142,000 for himself.

25      21.  The second false deduction concerned tax year 2009.  At

-6-

1  the end of 2009, Nadav Kalai informed IAZLOVSKY he would have to

2  pay tax on any money left in RTTV America's bank account at the

3  end of the tax year.  Nadav Kalai told IAZLOVSKY that if he did

4  not want to pay tax on this amount, he could wire the monies to

5  one of Nadav Kalai's companies so that he didn't have to pay tax

6  on it.  On December 15, 2009, IAZLOVSKY wired $900,000 to Office

7  Furnishing, Inc., a corporation owned and/or controlled by Nadav

8  Kalai.  Nadav Kalai was supposed to then wire the $900,000 back

9  to RTTV America the following year.  This scheme was devised to

10  create a paper trail to support a $900,000 false deduction on

11  RTTV America's tax return.

12      22.  IAZLOVSKY repeatedly asked Nadav Kalai to send the

13  money that had been sent to Nadav Kalai's entities back to

14  IAZLOVSKY's entities.  IAZLOVSKY told Nadav Kalai that he needed

15  the money to pay vendors so he wanted the money back.  Nadav

16  Kalai offered to pay the vendors directly and did wire

17  approximately $300,000 in payments to vendors on behalf of

18  IAZLOVSKY.  In total, Nadav Kalai retained approximately $642,000

19  of the monies funneled through Nadav Kalai's entities for

20  himself.  IAZLOVSKY did not report the theft to the police

21  because he knew his tax returns were false and did not want those

22  facts to come to light.

23      23.  With respect to tax year 2010, Nadav Kalai devised a

24  plan to falsely characterize $7.65 million in ordinary income

25  earned from the production and sale of documentaries and other

-7-

1   television programs as long term capital gain income.  Nadav

2   Kalai provided IAZLOVSKY with a false stock purchase agreement

3   concerning A&Y Associates.  The agreement purports to document a

4   sale of A&Y Associates to a third party.  No sale of A&Y

5   Associates occurred.  The document was created by Nadav Kalai to

6   support the false classification of ordinary income to capital

7   gains income.  The 2010 individual tax return of IAZLOVSKY

8   falsely reports a $7,000,000 long term capital gain from the sale

9   of A&Y Associates. IAZLOVSKY and Nadav Kalai agreed that Nadav

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  Kalai would receive of fee of $90,000 for completing this
2  transaction.

3

4                 **********************************

5      I have read this Attachment A to the Plea Agreement and

6  carefully discussed every part of this Attachment to the Plea

7  Agreement with my attorney.  I agree and stipulate to the facts

8  as stated above.

9

10  _____          12/14/2012

11  ALEXEI IAZLOVSKY                     Date
    Defendant

12

13

14      I am ALEXEI IAZLOVSKY's attorney.  I have read Attachment A

15  to the Plea Agreement and carefully discussed every part of this

16  Attachment to the Plea Agreement with my client.  To my

17  knowledge, my client's decision to agree to the facts as stated

18  above is an informed and voluntary one.

19

20  _____          12/19/12
    ROBERT KATZBERG                      Date
    Counsel for Defendant

21  Alexei Iazlovsky

22

23

24

25

                            -9-

1    <u>**PROOF OF SERVICE BY MAILING**</u>

2         I am over the age of 18 and not a party to the within action.   I

3    am employed by the Office of the United States Attorney, Central

4    District of California.   My business address is 300 North Los Angeles

5    Street, Suite 7211, Los Angeles, California 90012.

6         On <u>**May 16, 2013**</u>, I served

7         **PLEA AGREEMENT FOR DEFENDANT ALEXEI IAZLOVSKY**

8    on each person or entity name below by enclosing a copy in an envelope

9    addressed as shown below and placing the envelope for collection and

10   mailing on the date and at the place shown below following our

11   ordinary office practices.   I am readily familiar with the practice of

12   this office for collection and processing correspondence for mailing.

13   On the same day that correspondence is placed for collection and

14   mailing, it is deposited in the ordinary course of business with the

15   United States Postal Service in a sealed envelope with postage fully

16   prepaid.   Date of mailing: <u>**May 16, 2013**</u>

17        Place of mailing: Los Angeles, California

18        **See attached list**

19   I declare under penalty of perjury under the laws of the United States

20   of America that the foregoing is true and correct.

21        I declare that I am employed in the office of a member of the bar

22   of this court at whose direction the service was made.

23        Executed on: <u>**May 16, 2013**</u>, Los Angeles, California.

24

25                                    _____
                                              Barbara Le
26

27

28

**RE: UNITED STATES OF AMERICA v. ALEXEI IAZLOVSKY**


## Service List

Robert F. Katzberg
Kaplan & Katzberg
767 Third Avenue, 26th Floor
New York, NY 10017